UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TROY JOHNSON,

                              Plaintiff,

                                                            1:18-CV-1169
v.                                                          (GTS/DJS)

COLUMBIA MEM'L PHYSICIAN
HOSP. ORG., INC.,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

WELLNER AND ASSOCIATES, PLLC          PHILIP A. WELLNER, ESQ.
  Counsel for Plaintiff
  8 Anthony Street
  Hillsdale, NY 12521

WHITEMAN, OSTERMAN & HANNA LLP[1]      PAUL E. DAVENPORT, ESQ.
  Counsel for Defendant
  187 Wolf Road, Suite 211
  Albany, NY 12205

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this disability discrimination action filed by Troy Johnson,

("Plaintiff") against Columbia Memorial Physician Hospital Organization, Inc. ("Defendant"), is

Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).  (Dkt. No. 16.)  For

the reasons stated below, Defendant's motion is granted.

_____

[1]        Defense counsel is respectfully reminded of his duty to promptly file with the Court a
Notice of Change of Address, should he again change law firms during the course of his
representation of a client in a case pending in this District.  N.D.N.Y. L.R. 10.1(c)(2).

## I.      RELEVANT BACKGROUND

### A.      Relevant Procedural History

On September 17, 2018, Plaintiff commenced this action against Defendant, claiming that Defendant refused to make a reasonable accommodation for Plaintiff and terminated Plaintiff's employment because of his disability, thereby violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 et seq.  (Dkt. No. 1.)  On November 21, 2018, Defendant, through counsel, filed an Answer to Plaintiff's Complaint.  (Dkt. No. 4.)  On March 7, 2019, the parties participated in a mandatory mediation session, but were unable to settle their dispute.  (Dkt. No. 12.)  On September 12, 2019, Defendant filed the current motion for summary judgment.  (Dkt. No. 16.)  At that time, a deadline of September 30, 2019, was set for Plaintiff's response.  (*Id*.)  On September 13, 2019, the Court issued a Text Notice again reminding Plaintiff that his response was due on September 30, 2019.  (Dkt. No. 17.)  As of the date of this Decision and Order, Plaintiff has not filed a response, despite the fact that he continues to be represented by counsel in this action. (*See generally* Docket Sheet.)

### B.      Plaintiff's Complaint

Generally, Plaintiff's Complaint alleges that he is a veteran of the United States Marine Corps who received a diagnosis of anxiety with depression and post-traumatic stress disorder ("PTSD") due to his combat service.  (Dkt. No. 1.)  After disclosing this diagnosis during his hiring interview, Plaintiff was then hired by Defendant as a Housekeeping Supervisor on May 22, 2017.  (*Id*.)  Plaintiff alleges that, despite offering to provide him with an accommodation to keep his tasks organized, Defendant never actually provided the accommodation Plaintiff sought.  (*Id*.)  Plaintiff further alleges that Defendant terminated him based on his disability, in violation

of the ADA.  (*Id.*)  Based on these factual allegations, Plaintiff asserts a single claim under the ADA.  (*Id.*)

  **C.**  **Undisputed Material Facts**

  Unless otherwise noted, the following facts were asserted and supported with accurate citations by Defendants in their Statement of Material Facts and not denied by Plaintiff in a response thereto.  (Dkt. No. 16, Attach. 16 [Def.'s Rule 7.1 Statement].)

  1.  In May 2017, Plaintiff submitted to Columbia Memorial Hospital a job application showing that he had experience working in healthcare housekeeping, and then interviewed for such a position there.

  2.  During his interview, Plaintiff informed the interviewers that he suffered from PTSD.  Plaintiff claims that he acquired PTSD in the United States Marines Corps, not as a result of combat but as a result of playing a game of tackle football and being put in a headlock by another player.  For many years, Plaintiff worked with this condition as both a housekeeping supervisor and housecleaning supervisor at various hospitals, doing the same job for he was applying.

  3.  At Plaintiff's previous hospitals, he was provided with the following accommodations to perform his work satisfactorily: (1) time off during the months of August or September, because that was when his PTSD was most acute; and (2) time off so he could see his therapists.

  4.  During his interview, Plaintiff was given a list of duties and tasks that his new job as a Supervisor would require him to do.  Plaintiff did not say he could not perform any of the specified duties, and indicated that he felt that he could perform the specified duties.

5.      The essential function of the Housekeeping Supervisor was to make sure that the areas of the Hospital to which Plaintiff (and the housekeepers who worked for him) was assigned were kept clean.  That required Plaintiff to keep the housekeepers up to date on what areas they were to clean, perform rounds and check that the areas were properly cleaned, and make sure the patients felt that their area was clean.  To determine if patients felt their area was clean, Plaintiff was also to make sure that he visited three patients a day, inquire about their views of the cleanliness of their area, and report on these visits.

6.      Plaintiff was hired as a Supervisor of Housekeeping and was told that he was a probationary employee, and that his probation period was for ninety (90) days.

7.      Defendant provided Plaintiff with the same accommodations he was given at the other hospitals.

8.      Plaintiff claims that Defendant failed to provide him with another accommodation, namely a notebook to help him keep his tasks organized.

9.      Plaintiff claims one of the effects of his disability is that he has problems with his memory.  Specifically, he claims that his anxiety, depression, and PTSD interfered with his ability to focus clearly on his job tasks in response to his ninety-day performance evaluation.  Plaintiff also claims that his supervisor offered to provide notebooks to help him keep his tasks organized.

10.     Plaintiff was provided with a clipboard, legal notepad, a rounding sheet with his tasks, patient interview forms, and discharge papers to assist with organization and communication.

4

11.    During Plaintiff's ninety-day probationary period, he was given a sixty (60) day written evaluation review, as well as a ninety-day written evaluation review.

12.    Plaintiff's supervisor personally went over Plaintiff's ninety-day evaluation with him for half an hour to forty-five minutes.

13.    Plaintiff's ninety-day evaluation found the following:

    a.   Under the Category of Leadership;

        i.   Plaintiff did not consistently give thorough direction or explain the expectations to staff, and he lacked follow-through regarding the inspection of the tasks that he had assigned to people who worked under him, to ensure these tasks were completed.

    b.   Under the Category of Communication and Teamwork;

        i.   Plaintiff was only minimally meeting such goals as the following:

            1.   Communicating clearly,

            2.   Listening effectively,

            3.   Sharing appropriate information internally and externally,

            4.   Dealing effectively with conflicts and avoiding negative communication, and

            5.   Working to establish and maintain cooperative and productive relationships.

    c.   Under the Category of Planning;

        i.   Plaintiff needed to improve upon communication to effectively communicate pertinent information.

    d.   Under the Category of Performance Management and Employee Development;

        i.   Plaintiff was only minimally meeting the following requirements:

            1.   Clearly defining responsibilities and expectations of employees,

            2.   Providing effective and timely feedback and counseling about performance and documents, and

            3.   Dealing appropriately with performance issues.

    e.   Under the Category of Fiscal Management;

        i.   Plaintiff did not remember to follow through an outside vendor quotes and only minimally met staying within approved budget controls.

    f.   Under the Category of Critical Job Tasks;

        i.   Plaintiff only minimally met the standard of conducting facility rounds to ensure proper completion of the tasks he had assigned to his staff, and that he failed to meet the standard that he do three patient interviews surveys a day or fifteen (15) a week.

14.   Plaintiff was subsequently notified that he would not be made a permanent employee at the end of ninety-day probationary period, but his probation had been extended another sixty days to provide Plaintiff with time to improve upon all the deficiencies noted in his evaluation.

15.   These goals were explained on the last page of Plaintiff's performance evaluation, which was signed by Plaintiff and his supervisor on August 18, 2017.

16.   Plaintiff did not meet the goals in the next sixty days.

6

17.     Plaintiff's supervisor maintained notes of his performance after August 18, 2017.

At first, Plaintiff appeared to make more of an effort to meet the job requirements,

but then his effort fell off.  In late August and in September 2017, Plaintiff did not

improve and continued to make the same mistakes.

18.     In October 2017, Plaintiff's supervisors decided that Plaintiff should be let go

because he was not making the improvement they expected in a Supervisor.

19.     On October 8, 2017, or October 9, 2017, Plaintiff was informed that he was being

terminated.  After hearing this information, Plaintiff did not ask any questions and

left the office.

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in Defendant's Rule 7.1 Statement, is assumed in this

Decision and Order, which (again) is intended primarily for review by the parties.  (*Id.*)

**D.     Parties' Briefing on Defendant's Motion for Summary Judgment**

**1.     Defendant's Memorandum of Law**

Generally, Defendant's motion for summary judgment requests the dismissal of

Plaintiff's Complaint for the following two reasons: (1) Defendant terminated Plaintiff because

he could not perform the essential functions of the Hospital Supervisor position,[2] not because of

Plaintiff's disability; and (2) Defendant provided Plaintiff with reasonable accommodations that

---

[2]     Defendant defines the three essential functions of the Hospital Supervisor position as (1) planning and controlling daily housekeeping functions by providing the Supervisor's staff with direction, follow through, and clarity, (2) conducting multiple rounds to check the areas the Supervisor's staff need to clean, and (3) performing patient interviews at least three times a day to verify that patients are content with the cleanliness of the hospital.  (Dkt. No. 16, Attach. 17, at 6.)

would allow him to perform the essential functions of his position.  (*See generally* Dkt. No. 16, Attach. 17 [Def.'s Memo. of Law].)

With respect to Plaintiff's termination, Defendant argues that it provided Plaintiff with the essential functions of the position during the hiring interview, addressed Plaintiff's deficient performance in his ninety-day performance evaluation, and extended Plaintiff's probationary period for an additional sixty days to provide Plaintiff with the opportunity to remedy his deficient performance.  (*Id.*)  Defendant argues that Plaintiff's termination was a result of his inability to perform the essential functions of his position within the extended probationary period, not his disability.  (*Id.*)

Defendant also argues that it provided Plaintiff with the three accommodations he requested.  Specifically, Plaintiff requested the following: (1) time off during August when his PTSD "acted up," (2) the ability to adjust days off to attend therapy sessions, and (3) a covered notebook.  As to the first two accommodations, Defendant argues that Plaintiff expressly admitted that Defendant granted these accommodations.  (*Id.*)

With respect to the third accommodation, Defendant argues that Plaintiff's first request for a covered notebook was in his Complaint, the notebook did not qualify as an accommodation, and Defendant provided equivalent accommodations to the requested notebook.   (*Id.*)  Defendant also argues that Plaintiff did not initially request the notebook.  (*Id.*)  Instead, Plaintiff's supervisor, Kimberly Stieberitz, offered to provide him with a legal notepad to organize his tasks. (*Id.*)  Defendant further argues that Plaintiff admitted that Defendant did not refuse to provide a specific accommodation, thereby demonstrating that Plaintiff did not make a specific request for the notebook.  (*Id.*)  Moreover, Defendant argues that the notebook cannot qualify as an accommodation for Plaintiff's disability because Plaintiff expressly admitted that

he requested a notebook to communicate more effectively with his supervisor, not to overcome the memory problems that resulted from Plaintiff's PTSD.  (*Id*.)

Finally, Defendant argues that it provided Plaintiff with accommodations that were equivalent to the requested notebook by giving Plaintiff a clipboard, yellow legal pad, a rounding sheet with his tasks, patient interview forms, and discharge papers.  (*Id*.)  Defendant argues that these accommodations served the same purpose as a covered notebook by allowing Plaintiff to write down and organize his tasks effectively, thus satisfying any obligation that Defendant may have had to provide a reasonable accommodation.  (*Id*.)  Although Plaintiff allegedly requested a covered notebook, Defendant also argues that it may exercise its discretion and provide a reasonable alternative to the requested accommodation.  (*Id*.)

### 2.      Plaintiff's Failure to Respond

Plaintiff failed to file a response to Defendant's motion by the deadline of September 30, 2019, and has not filed any response as of the date of this Decision and Order.[3]

## II.      GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is

---

[3]      In the future, Plaintiff's counsel is respectfully reminded of his duty to promptly notify the Court of his intent to not oppose a motion.  N.D.N.Y. L.R. 7.1(b)(3).

[4]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

      In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a), (c), (e).[5]

      Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[6]

      Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

---

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[5]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to
the movant's Statement of Material Facts, which admits or denies each of the movant's factual
assertions in matching number paragraphs, and supports any denials with a specific citation to
the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[6]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing
cases).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[7]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[8]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See*

---

[7]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[8]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

After carefully considering the matter, the Court finds that Defendant has met its lightened burden on its unopposed motion. *See, supra*, Part II of this Decision and Order. More specifically, the Court finds, for the reasons stated in Defendant's memorandum of law, that Defendant has demonstrated entitlement to the relief requested by presenting arguments that are, at the very least, facially meritorious. *See, supra,* Part I.B. of this Decision and Order. The Court notes that, even if it were to subject Defendant's arguments to the more-rigorous scrutiny appropriate for a contested motion, the Court would accept those arguments. For all of these reasons, the Court grants Defendant's motion.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 28, 2020
       Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge